UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| LIBERTY INSURANCE UNDERWRITERS, INC., an Illinois Corporation,<br><br>    Plaintiff,<br><br>v.<br><br>JAMES H. WOLFE, III, EMILY ROSEBORO, Administratix Ad Prosequendum for the Estate of Wilbur Lee Roseboro and Executrix of THE ESTATE OF WILBUR LEE ROSEBORO, DECEASED, EMILY ROSEBORO, individually, COUNTY OF ESSEX, TILCON, NEW YORK, INC., and THE CITY OF EAST ORANGE,<br><br>    Defendants. | **OPINION**<br><br>Civ. No. 16-2353 (WHW)(CLW) |

**Walls, Senior District Judge**

Plaintiff Liberty Insurance Underwriters, Inc. moves under Fed. R. Civ. P. 55 for default judgment against Defendant James H. Wolfe, III. Liberty asserts that Defendant made material misrepresentations in initial and renewal applications for a Lawyers Professional Responsibility Liability Insurance Policy with Liberty. Defendant has failed to plead or otherwise defend this lawsuit. Decided without oral argument under Fed. R. Civ. P. 78, Plaintiff's motion is granted.

**PROCEDURAL AND FACTUAL BACKGROUND**

**I.    The Parties and the Liberty Lawyers Liability Insurance Policies**

Liberty Insurance Underwriters ("Liberty") is an Illinois corporation with its principal place of business in Boston, Massachusetts. Compl., ECF No. 1 ¶ 1. Defendant James H. Wolfe, III ("Wolfe") is a citizen of New Jersey. *Id.* ¶ 3. Liberty initially issued a Lawyers Professional

1

Responsibility Liability Insurance Policy, No. LPA303137-0111 to Wolfe for the policy period November 10, 2011 to November 10, 2012 ("2011 Policy"). *Id.* ¶ 13. The 2011 Policy was a claims made and reported policy with a limit of liability of $1,000,000 for each claim, and $1,000,000 in the aggregate with claim expenses that reduce limits of liability. *Id.* ¶ 14. Liberty renewed Wolfe's 2011 Policy for the period November 10, 2012 to November 10, 2013: Policy No. LPA303137-0112 ("2012 Policy"), *id.* ¶ 17, and his 2012 Policy for the period November 10, 2013 to November 10, 2014 with Policy No. LPA303137-0113 ("2013 Policy"). *Id.* ¶ 18. Wolfe did not renew the 2013 Policy past the November 10, 2014 expiration date. The 2012 and 2013 policies were also claims made and reported policies. *Id.* ¶¶ 17–18.

## II.     Wolfe's Liberty Insurance Policy Application and Renewal Applications

The Liberty Lawyers Professional Liability Insurance Application asks applicants to certify that they have no knowledge of any circumstance, act, error or omission that could result in a professional liability claim under the policy. *Id.* ¶¶ 20–28. In addition, each policy contains a provision instructing insureds to give Liberty written notice of any claim against them. As example, regarding notice of a potential claim, Wolfe's 2011 Policy required:

> **Notice of Claims.** You must give us written notice of any claim(s) or potential claim(s) made against you as soon as practicable. In the event suit is brought against you, you must immediately forward to us every demand, notice, summons, complaint or other process received directly or by your representative. Written notice of any claims against you, as well as of each demand on or action against us must be delivered to us . . .

*Id.* ¶ 16.

In his 2011 Policy application as well as each renewal application, Mr. Wolfe answered "no" to the question asking whether he had knowledge of any circumstance, act, error or omission that could result in a professional liability claim under the policy. *Id.* ¶¶ 21, 24, 27. In addition to the renewal application prepared by Mr. Wolfe for the 2013 Policy, Mr. Wolfe also

2

submitted a Notice of Acceptance Letter to Liberty on November 5, 2013, in which he wrote, in part: "this letter acknowledges that, after inquiry, I am not aware of any claims and/ or circumstances, acts, errors, or omissions that could result in a professional liability claim since completion of my last application and supplements." *Id.* ¶28. As a result of Mr. Wolfe's certification on each application that he had no knowledge of circumstances that could result in potential claims against him, Liberty issued the 2011, 2012, and 2013 policies. *Id.* ¶¶ 22, 25, 29. Liberty now contends that these certifications were material misrepresentations. *Id.* ¶¶ 56–67.

### III. Wolfe's Representation of the City of East Orange and Emily Roseboro

Plaintiff's claim that Wolfe made misrepresentations on his insurance application and renewal applications stems from his representation of the City of East Orange and Emily Roseboro. From 2011 to 2013, Wolfe represented the City of East Orange regarding a workers' compensation claim filed by Valerie Gadsden, a former employee of the City of East Orange. *Id.* ¶ 32. On July 26, 2011, Gadsden obtained a judgment for $208,825.45 against the City of East Orange in her workers' compensation action. *Id.* ¶ 33. The City of East Orange, through its third-party administrator, advised Wolfe to appeal the Gadsden judgment on August 8, 2011, but he failed to timely do so. *Id.* ¶¶ 34–35. On November 28, 2012, the Gadsden judgment was entered, and on October 24, 2013, a Writ of Execution was filed on behalf of Gadsden to enforce the judgment. *Id.* ¶¶ 36–37. Wolfe advised Liberty of the Gadsden judgment and asked that a claim be made under the 2013 Policy on December 31, 2013. *Id.* ¶ 38. Liberty requested further information about the Gadsden case on at least five occasions between January 13, 2014 and January 30, 2014, but Wolfe did not respond to Liberty's requests.

During approximately the same period of time, Wolfe also represented Emily Roseboro in a lawsuit against her employer Ticlon, Inc., for damages sustained as a result of an accident

that occurred on February 9, 2011. *Id.* ¶ 41. On March 12, 2013, Wolfe filed Roseboro's personal injury and ultimately wrongful death action against Tilcon, but Wolfe had waited too long to bring the suit. *Id.* ¶ 43. Summary judgment was granted to Tilcon on October 15, 2013 because the suit was time-barred. *Id.* ¶ 44. Roseboro's estate filed a malpractice action against Wolfe on September 18, 2014. *Id.* ¶ 45. Wolfe informed Liberty of the malpractice suit filed by Roseboro on November 7, 2014. *Id.* ¶ 46. Between November 12, 2014 and November 19, 2014, Liberty requested information about Wolfe's representation of Roseboro on at least five occasions, but he failed to respond. *Id.* ¶¶ 47–48. On December 10, 2014, Liberty appointed defense counsel to defend the interests of Wolfe against the claims raised on behalf of the Estate of Emily Roseboro. *Id.* ¶ 55. At the same time, Liberty also advised Wolfe that it was "reserving its right to contend that Wolfe failed to disclose material facts to Liberty in Wolfe's Warranty Statement, signed November 5, 2013 and policy Renewal Application, dated November 8, 2013. *Id.* ¶ 54.

## I. The Complaint and Wolfe's Failure to Litigate

Liberty filed the complaint in this matter on April 26, 2016. Compl. ECF No.1. The Complaint alleges that Wolfe made material misrepresentations in his 2011 Policy Application and subsequent renewal applications. *Id.* ¶ 59. Because of the misrepresentations, Liberty argues that the 2013 Policy is void *ab initio* and of no force. *Id.* ¶ 64. Liberty also disclaims any liability to any party under the 2013 Policy. *Id.* ¶ 65. Liberty seeks relief in the form of damages, rescission of the 2013 Policy, and a declaration that upon return of Wolfe's premiums, the 2013 Policy is void *ab initio*, is of no force and effect from inception, and that Wolfe has no interest therein. *Id.* ¶ 71(a). The summons and complaint were served on Wolfe on May 16, 2016. ECF No. 12. Wolfe failed to respond or otherwise defend this action despite being properly served. On August 9, 2016, nearly three months after the Complaint was served on Wolfe, Liberty

moved for default. ECF No. 24. Default was entered as to Wolfe on August 10, 2016. *Id.* On December 15, 2016, Plaintiff moved this Court for a default judgment. ECF No. 26. Plaintiff has not filed an opposition to Plaintiff's motion or otherwise defended against default.

## STANDARD FOR DEFAULT JUDGMENT

Three factors are considered when evaluating a motion for default judgment under Fed. R. Civ. P. 55: (1) whether there is "prejudice to the plaintiff if default is denied," (2) "whether the defendant appears to have a litigable defense," and (3) "whether defendant's delay is due to culpable conduct." *Chamberlain v. Giampapa*, 210 F.3d 154, 164 (3d Cir. 2000). Factual allegations in a complaint will be treated "as conceded by the defendant," *DIRECTV, Inc. v. Pepe*, 431 F.3d 162, 165 (3d Cir. 2005), but a court will inquire "into whether the unchallenged facts constitute a legitimate cause of action." *Days Inns Worldwide, Inc. v. Mayu & Roshan, L.L.C.*, 2007 WL 1674485, at *4 (D.N.J. June 8, 2007) (citations omitted). A court does not accept the alleged amount of damages as true. *Comdyne I, Inc. v. Corbin*, 908 F.2d 1142, 1149 (3d Cir. 1990). Rule 55(b)(2) of the Federal Rules of Civil Procedure provides that, in order to determine the amount of damages in the context of a default judgment, "the court may conduct [a] hearing[]." A court may determine damages without a hearing "as long as [it] ensure[s] that there [is] a basis for the damages specified in the default judgment." *Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp.*, 109 F.3d 105, 111 (2d Cir. 1997).

## DISCUSSION

### I.     Jurisdiction

Subject matter jurisdiction exists under 28 U.S.C. § 1332. Plaintiff is an Illinois Corporation with its principal place of business in Massachusetts. Compl. ¶ 1. Defendant is a

5

citizen of New Jersey. *Id.* ¶ 2. The amount in controversy at the time of filing exceeded $75,000. *Id.* ¶ 10. Personal jurisdiction exists because Defendant is a citizen of New Jersey. *Id.* ¶ 2.

## II. Default Judgment is Appropriate

This action is based on material misrepresentations made by Wolfe in the initial application and renewal applications of his Liberty Lawyers Professional Responsibility Liability Insurance policies. Under New Jersey law, an insurance carrier can rescind an insurance policy based on a material misrepresentation made by the insured. *Liberty Surplus Ins. Corp., Inc., v. Nowell Amoroso, et al.*, 189 N.J. 436 (2006). In *Amoroso*, the New Jersey Supreme Court affirmed a trial court's grant of summary judgment to a legal malpractice insurer when the insured law firm did not disclose on its insurance application that it had recently neglected to timely file a client's complaint. *Id.* 442–44. The Court concluded that the insured had no coverage under the malpractice insurance policy based on its knowing misrepresentations. *Id.* 449–50. Additionally, the court in *Scott Liebling v. Garden State Indemnity*, 337 N.J. Super. 447 (2001) found rescission of a legal malpractice insurance policy based on equitable fraud appropriate when the insured made a knowingly false denial of his awareness of a possible malpractice claim on the insurance policy application. *Id.* 463–66.

Here Wolfe completed his initial Liberty policy application only three days after he had filed a late appeal of the Gadsden judgment against the City of East Orange. ECF No. 1 ¶ 20. Even if Wolfe did not know at the time that he had filed a late appeal, and would therefore be potentially subject to a malpractice claim, he was specifically admonished by the Gadsden trial court in a July 27, 2012 order stating that Wolfe had filed "a notice of appeal some sixty days late" and ignored "the Appellate Division's request of December 27, 2011 for an appropriate motion to permit the late filing." ECF No. 26-2 at 11. This admonishment should have been

referenced in Wolfe's policy renewal application in 2012 or 2013 when he was asked about potential claims, but it was not.

Wolfe also failed to make material representations related to the Roseboro case. After Wolfe filed a claim for Roseboro outside the statute of limitations, Tilcon moved for summary judgment. Wolfe did not object to, or oppose, Tilcon's motion, which was granted October 15, 2013 and its order served on Wolfe on November 5, 2013. ECF No. 1 ¶ 44. Only three days later, Wolfe completed his Liberty policy renewal for 2013, again stating "no" when asked if there a claim could potentially be filed against him. Id. ¶¶ 26–27. Because Plaintiff has shown that Wolfe knowingly made material misrepresentations in his 2011, 2012, and 2013 Liberty insurance applications, Plaintiff has sufficiently pled a legitimate basis for the requested relief.

Not only has Liberty established a basis for relief, Liberty will also suffer prejudice if default is denied because it will continue to be bound by the contract that Wolfe procured through fraud. Moreover, Defendant has not advanced arguments and supporting facts to suggest that he has a litigable defense in the more than nine months since this action was filed. He has failed to retain counsel since the filing of the complaint or participate in the litigation in anyway. Having considered the *Chamberlain* factors in light of these circumstances, default judgment is granted.

### III. The Amount of Damages Is Satisfactorily Established

Liberty seeks to rescind Wolfe's 2013 Policy[1] and be reimbursed for all costs associated with the underwriting, insurance and administration of the 2013 Policy. Liberty has not included submissions detailing the amount it seeks in administration costs related to the 2013 Policy. The

---

[1] Liberty represents that if granted rescission it would return the premium with interest. ECF No. 1 ¶ 67. The Court considers this mandated by *Merchants Indem Corp. v. Eggleston*, 37 N.J. 114, 130 (1962).

7

NOT FOR PUBLICATION

Court will not award damages until further submissions sufficiently establish the damages Liberty seeks.

## CONCLUSION

Plaintiff's motion for default judgment is granted. Judgment is entered against Defendants with a declaration providing for rescission of the 2013 malpractice insurance policy between Liberty and Wolfe. An appropriate order follows.

DATE: 30 Jan 2017

William H. Walls
Senior United States District Court Judge